# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

ARTHUR LEE COSEY                                                        PLAINTIFF

v.                                4:16CV00763-JTK

ROSS, et al.                                                    DEFENDANTS

## MEMORANDUM AND ORDER

**I.**     **Introduction**

Plaintiff Arthur Cosey filed this pro se action pursuant to 42 U.S.C. § 1983, alleging improper conditions of confinement, inadequate medical care, failure to protect, and denial of equal protection, while incarcerated at the White County Detention Center (Jail) (Doc. No. 2). Defendants Brawn, Vaughn, Lacy, and Hawk were dismissed on February 2, 2017 (Doc. No. 15).

Pending before the Court is the Motion for Summary Judgment, Brief in Support, and Statement of Facts filed by remaining Defendants Ross and Grimes (Doc. Nos. 17-19). By Order dated August 17, 2017, this Court directed Plaintiff to respond to the Motion within fifteen days, and cautioned him that failure to respond would result in all of the facts set forth in Defendants' summary judgment papers deemed admitted by him, or the dismissal of his complaint, without prejudice, for failure to prosecute (Doc. No. 20). The Court then granted Plaintiff's Motion to Extend Time to respond on September 11, 2017, giving him an additional thirty days (Doc. No. 22). The Court granted a second thirty-day extension on October 18, 2017, noting that no additional extensions would be granted (Doc. No. 24). As of this date, Plaintiff has not responded to Defendants' Motion.

**II.**     **Complaint**

Plaintiff alleged he was arrested following a traffic accident on March 12, 2016, and that the Jail refused to provide him medical attention. (Doc. No. 2, p. 5) Defendant Ross ignored his requests for help and to make a telephone call, and initially he was not provided a mat on which to sleep. (Id.) Plaintiff lost control of his bowels and soiled himself but was not permitted to shower until March 14, 2016, and Ross again denied Plaintiff's requests to be taken to the hospital (Id.) Plaintiff was seen by a nurse on March 14, but she failed to examine his arm or treat him for pus-filled sores. (Id.) Two white inmates were taken to the emergency room during the time that officials refused Plaintiff's requests. (Id.)

On July 7, 2016, Plaintiff complained to a nurse about a boil, and he was sent to the emergency room for treatment. (Id., p. 6) He was not given his medication until July 8, 2016, and he was only allowed two puffs every four hours with his asthma inhaler. (Id.) Defendant Ross failed to address Plaintiff's harassment by other inmates and on July 23, 2017, Plaintiff and others were assaulted. (Id.) Although Plaintiff was taken to the emergency room, Defendant Grimes never investigated the incident or questioned Plaintiff about his injuries. Plaintiff claimed he was denied proper medical attention or medications and was neglected while he was incarcerated. (Id.)

### III.    Summary Judgment

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144

F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

In addition, "[a]ll material facts set forth in the statement (of undisputed material facts) filed by the moving party...shall be deemed admitted unless controverted by the statement filed by the non-moving party...." Local Rule 56.1, Rules of the United States District Court for the Eastern and Western Districts of Arkansas. Failure to properly support or address the moving party's assertion of fact can result in the fact considered as undisputed for purposes of the motion. FED.R.CIV.P. 56(e)(2).

### A. Exhaustion

Defendants first ask the Court to dismiss Plaintiff's equal protection, failure to protect, and denial of a mat claims for failure to exhaust his administrative remedies, as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e. According to Defendant Grimes' affidavit, the detention center grievance policy provides for detainees to submit grievances through a computer kiosk system. (Doc. No. 19-1, p. 3; Doc. No. 19-7) Plaintiff utilized the grievance system on numerous occasions. (Doc. No. 19-6) Defendants claim, however, that Plaintiff never grieved the above-referenced claims; therefore, they should be dismissed.

According to the PLRA,

> No action shall be brought with respect to prison conditions under

3

section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), unconst'l on other grounds, Siggers-El v. Barlow, 433 F.Supp.2d 811, 813 (E.D. Mich. 2006). The courts have interpreted this provision as a mandatory requirement that administrative remedies be exhausted prior to the filing of a lawsuit. In Booth v. Churner, the United States Supreme Court held that in enacting the PLRA, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." 532 U.S. 731, 741 (2001). In addition, the United States Court of Appeals for the Eighth Circuit held in Chelette v. Harris, "[t]he statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them. Chelette failed to do so, and so his complaint must be dismissed, for 'we are not free to engraft upon the statute an exception that Congress did not place there.'" 229 F.3d 684, 688 (8th Cir. 2000) (quoting Castano v. Nebraska Dep't of Corrections, 201 F.3d 1023, 1025 (8th Cir. 2000)). In Johnson v. Jones, the Court held that "[u]nder the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court....If exhaustion was not completed at the time of filing, dismissal is mandatory." 340 F.3d 624, 627 (8th Cir. 2003) (emphasis in original). Finally, in Jones v. Bock, the United States Supreme Court held that while the PLRA itself does not require that all defendants be specifically named in an administrative grievance, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." 549 U.S. 199, 218 (2007).

The Court has reviewed the grievances submitted by Defendants and finds that although Plaintiff did not submit a grievance about his equal protection and failure to protect claims, he did grieve the denial of a mat on April 24, 2016 (Doc. No. 19-6, p. 25). Therefore, the equal

protection and failure to protect claims will be dismissed without prejudice for failure to exhaust.

### B. Qualified Immunity

Defendants also ask the Court to dismiss Plaintiff's remaining medical and conditions claims against them in their individual capacities, based on qualified immunity, which protects officials who act in an objectively reasonable manner. It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. Pearson v. Callahan, 555 U.S. 223, 232 (2009).[1] Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009).

---

[1] Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Nelson, 583 F.3d at 528 (quoting Pearson v. Callahan, 555 U.S. at 236).

### 1) **Conditions**

Plaintiff complained that when he initially arrived at the Jail, he was forced to sleep on the floor without a mat until a nurse provided him a yoga mat on the third day (Doc. No. 2, p. 5). He also claimed that Ross cuffed him to the bench in soiled clothing on March 12, 2016, and Plaintiff was not permitted to take a shower until March 14, 2016. (Id.)

According to Defendant Grimes, when Plaintiff was booked into the Jail on March 12, 2016, he signed an "Issue Sheet" indicating that he was given clothes, a mat, a towel, a blanket and a sheet. (Doc. No. 19-1, p. 2; Doc. No. 19-2, p. 9) Plaintiff was released from the Jail to the Arkansas State Hospital on August 23, 2016. (Doc. No. 19-1, p. 2)[2]

Defendants ask the Court to dismiss these improper conditions allegations because Plaintiff was not denied the minimal measure of life's necessities and cannot show that denial of a mat and shower for less than two days posed a substantial risk of serious harm to his health, citing Farmer v. Brennan, 511 U.S. 825, 834 (1994).

Since Plaintiff was a pretrial detainee at the time of his incarceration, the due process standard of the Fourteenth Amendment applies to determine the constitutionality of his conditions of confinement. "Under the Fourteenth Amendment, pretrial detainees are entitled to 'at least as great' protection as that afforded convicted prisoners under the Eighth Amendment." Owens v. Scott County Jail, 328 F.3d 1026 (8th Cir. 2003) (quoting City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983)). "[I]nmates are entitled to reasonably adequate sanitation, personal hygiene,

---

[2] According to a Judgment issued on August 2, 2016 in the White County Circuit Court, Plaintiff was acquitted of his criminal charges because of mental disease or defect. (Doc. No. 19-2, pp. 17-19)

and laundry privileges, particularly over a lengthy course of time." Howard v. Adkison, 887 F.2d 134, 137 (8th Cir. 1989).

Conditions which "deprive inmates of the minimal civilized measure of life's necessities," may be considered cruel and unusual, and therefore, unconstitutional. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). In determining when pretrial detention is considered unconstitutionally punitive, the courts apply the Eighth Amendment deliberate indifference standard, focusing on the length of exposure to unsanitary conditions and the degree to which the conditions are unsanitary. Whitnack v. Douglas County, 16 F.3d 954, 957 (8th Cir. 1994). "Conditions of confinement, however, constitute cruel and unusual punishment 'only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise.'" Id., (quoting Wilson v. Seiter, 501 U.S. 294, 304 (1991)).

"Although the Eighth Amendment's prohibition of cruel and unusual punishment bars more than physical torture, 'discomfort compelled by conditions of confinement, without more, does not violate the amendment.'" Martin v. Byrd, No. 4:07cv01184SWW, 2008 WL 686936 * 4 (E.D.Ark.2008) (quoting Smith v. Coughlin, 748 F.2d 783, 787 (2d Cir. 1984) (other citations omitted.))

In Smith v. Copeland, an inmate who alleged that he was subjected to raw sewage from an overflowed toilet in his cell for four days (and was forced to endure the stench of his own feces), did not state a constitutional claim for relief. 87 F.3d 265, 268 (8th Cir. 1996). The Court found that the allegation amounted to a de minimus imposition and did not implicate constitutional concern. Id. And, an inmate who was provided one roll of toilet paper per week did not state a constitutional claim for relief in Stickley v. Byrd, 703 F.3d 421, 423-24 (8th Cir. 2013). The

7

Court found that the defendants' refusal to grant the inmate's request for additional toilet paper did not violate a clearly established right, and that "not every deprivation … rises to the level of punishment under the due process clause." Id. at 424 (quoting Green v. Baron, 879 F.2d 305, 310 (8th Cir. 1989)). A pretrial detainee who slept two nights on the floor next to the toilet, where he was sprinkled with urine, did not state a constitutional claim for relief, in Goldman v. Forbus, 17 Fed. App. 487, 488 (8th Cir. 2001) (unpublished per curiam). And, a pretrial inmate who was denied a shower and a mat for two days was not denied the minimal civilized measure of life's necessities, according to the court in Farver v. Robinson, No. 4:07CV00025SWW, 2007 WL 473739 (E.D.AR 2007).

Initially, the Court finds that the two-day denial of a mat did not constitute a deprivation of a single, identifiable human need and did not deny Plaintiff the minimal measure of life's necessities, as set forth in Rhodes, 452 U.S. at 347. However, I am bothered by Plaintiff's claim that he sat in soiled clothes for two days and I hesitate to condone such conduct. Yet, absent a response from Plaintiff to Defendants' Motion, or additional facts indicating Defendants refused to allow him to change his clothes or clean himself up using the sink in his cell, and based on the case law cited above, I find that his allegation fails to support a constitutional claim for relief. In addition, Plaintiff provided no evidence to support a finding of deliberate indifference by either of the Defendants or that he suffered harm as a result of the conditions. Therefore, based on the case law cited above, the Court finds that Defendants did not violate a clearly established right and that they are entitled to qualified immunity.

### 2)  Medical Care

Defendant Grimes states in his affidavit that he is not a medical professional, and that in 2016, White County contracted with Advanced Correctional Healthcare to provide medical

services to the detainees by medical professionals. (Doc. No. 19-1, p. 3) Defendants also state that Plaintiff's medical records show that he was not denied adequate medical care and treatment.

According to those medical records, Plaintiff submitted a sick call request form on March 14, 2016, stating that he suffered pain in his arm, neck, shoulder, and back from a car wreck. (Doc. No. 19-3, p. 10)  He was evaluated by a physician and nurse who noted a full range of motion to Plaintiff's upper extremities, and Plaintiff's history of back injuries. (Id., p. 12)  The medical professionals prescribed Tylenol and suggested a warm compress as tolerated. (Id.)  Jail officials placed Plaintiff on suicide watch on March 17, 2016, after he told a judge that he wished someone who threatened him would have killed him. (Id, p. 13-21)  He was released from suicide watch on March 17, 2016, after a mental health professional evaluated him. (Id.) Medical personnel contacted Walgreens pharmacy on March 30, 2016, about Plaintiff's medications. (Id., pp. 27-28). He was given a TB test on April 8, 2016, and requested medications on Mary 12, 2016, and June 6, 2016. (Id., pp. 29-33).  Medical personnel contacted Walgreens again on June 8, 2016 to verify an inhaler and other medications for Plaintiff (Id., p. 34) A physician approved his request for Albuteral medication on July 1, 2016. (Id., p. 37).

On July 4, 2016, Plaintiff submitted a sick call request about a boil on his back side. (Id., p. 38).  A nurse examined him on July 7, 2016, and Plaintiff was sent to the White County Medical Center emergency room for treatment and medication. (Id., pp. 41-45).  Jail medical professionals saw Plaintiff as a follow-up on July 8, 2016, and issued medication orders. (Id., pp. 46-48).  Plaintiff took Clindamycin (antibiotic) from July 9, 2016, through July 17, 2016, and 200 mg Ibuprofen from July 9, 2016, through July 10, 2016. (Id.).  Plaintiff submitted a sick call request for treatment of the boil on July 18, 2016, and was evaluated on July 19, 2016. (Id., p. 53) The nurse noted mostly hardness to the tissue and swelling and secured orders for Keflex for ten

9

days. (Id, p. 54). Plaintiff refused Breo and Spiriva medications on July 20, 2016, July 22, 2016, July 24, 2016, and August 9, 2016. (Id., pp. 56, 57, 61, 63). He was involved in an altercation with another inmate on July 23, 2016, and was taken to the emergency room where he was treated for a facial contusion. (Id., pp. 58-60). The Jail medical department saw him for a follow-up on July 25, 2016, and noted that he ambulated with a limp and presented swelling to his left eye over his brow, but that did not want Tylenol. (Id., p. 62)

Based on these records, Defendants state that Plaintiff cannot show they acted with deliberate indifference to his serious medical needs, or that any alleged delay in receiving medical care or medication caused a detrimental effect to his health.

As noted above, Since Plaintiff was a pretrial detainee at the time of his incarceration, the due process standard of the Fourteenth Amendment applies to determine the constitutionality of his conditions of confinement. Bell v. Wolfish, 441 U.S. 520, 535 (1979). In the Eighth Circuit, however, the standards applied to such claims are the same as those applied to Eighth Amendment claims. Whitnack, 16 F.3d at 957. Therefore, in order to support an Eighth Amendment claim for relief, Plaintiff must allege and prove that Defendants were deliberately indifferent to a serious medical need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). However, even negligence in diagnosing or treating a medical condition does not constitute a claim of deliberate indifference. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Rather, the "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation," Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). See also Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990) (holding that a mere disagreement with a course of medical treatment is insufficient to state a claim for relief under the Eighth Amendment). Furthermore, prison physicians are entitled to exercise their

10

medical judgment, and "do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996). In addition, an inmate who complains that a delay in medical treatment constitutes a constitutional violation must provide "verifying medical evidence" in the record to establish the detrimental effect of the delay, in order to succeed on his claim. Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995) (overruled in part on other grounds). "In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." Dulany, 132 F.3d at 1240.

Furthermore, "a general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995). A prison official who is "not involved in treatment decision made by the medical unit's staff and 'lacked medical expertise...cannot be liable for the medical staff's diagnostic decision[s].'" Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997) (quoting Camberos, 73 F.3d at 176). "[I]f any claim of medical indifference ... is to succeed, it must be brought against the individual directly responsible for [plaintiff's] medical care." Kulow v. Nix, 28 F.3d 855, 859 (8th Cir. 1994) (quoting Brown v. Wallace, 957 F.2d 564, 566 (8th Cir. 1992)).

Based on the medical records provided by Defendants and Plaintiff's failure to respond and offer evidence to the contrary, the Court finds as a matter of law that Defendants did not act with deliberate indifference to Plaintiff's serious medical needs. The medical records show that Plaintiff was seen by Jail medical personnel two days after he arrived at the Jail, and that during the course

11

of his stay at the Jail he was treated on several occasions. Even assuming as true Plaintiff's allegation that Ross ignored his requests for emergency medical treatment, the Court finds no evidence that as a non-medical professional he acted with deliberate indifference to a serious medical need. In addition, Plaintiff provides no evidence that either of the Defendants knew of a serious medical condition, failed to act, and caused a detrimental impact to Plaintiff's medical condition. Therefore, absent additional facts or evidence from Plaintiff to show otherwise, the Court finds that Defendants acted reasonably under the circumstances, and that no reasonable fact finder could find that the facts as alleged or shown, construed in the light most favorable to Plaintiff, establish a violation of a constitutional or statutory right.

**IV.    Conclusion**

IT IS, THEREFORE, ORDERED that Defendants' Motion for Summary Judgment (Doc. No. 17) is GRANTED, and Plaintiff's Complaint is DISMISSED with prejudice.

An appropriate Judgment shall accompany this Memorandum and Order.

IT IS SO ORDERED this 30th day of November, 2017.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE